IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMCAST OF ILLINOIS X, LLC, an Illinois Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>TKA ELECTRONICS, INC., and THOMAS ABBOUD, individually, and CATHY VIGNERI, individually, and KIM ABBOUD, individually, and RAYMOND VIGNERI, individually, and TERRY ABBOUD, individually,<br><br>Defendants. | 8:02CV429<br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the court on cross-motions for summary judgment filed by defendant Thomas Abboud, Filing No. 153, defendant Raymond Vigneri, Filing No. 155, defendant Terry Abboud, Filing No. 157, defendant Cathy Vigneri, Filing No. 158, and plaintiff Comcast of Illinois X, LLC ("Comcast"), Filing No. 151. The defendants appear *pro se.* The parties have filed briefs and supporting documentation with their motions. Filing Nos. 152, 156, 159, 161, 162, 163, 164, 165, 166, 167, 168, 170, 171, 172, 173. Also pending is Comcast's "Memorandum in Support of its Prove Up on Damages," Filing No. 149, which the court will construe as a motion for entry of default judgment against defendant TKA,[1] and defendant Thomas Abboud's motion to strike that pleading, Filing No. 154.[2]

---

[1] A clerk's entry of default against defendant TKA was entered on December 23, 2004. Filing No. 146.

[2] In addition, defendant Thomas Abboud has filed an entirely baseless, frivolous and spurious motion to dismiss, premised on Comcast's alleged perjury in its original affidavit. See Filing No. 183. The court finds Thomas Abboud's contention is totally lacking in merit and the motion will be denied.

1

This is an action for declaratory and injunctive relief and monetary damages pursuant to the Cable Communications Act, 47 U.S.C. §§ 553, et seq. ("the Act") and Neb. Rev. Stat. § 28-515. Comcast alleges that the defendants manufactured, sold or otherwise distributed cable television descrambling equipment used to "pirate" its cable television programming services, in violation of the Act and Nebraska law. *See* Filing No. 113, Amended Complaint.

The court has reviewed the record and the parties' submissions and finds that Comcast's motion for summary judgment should be granted and defendants' motions should be denied. In addition, the court finds Comcast's motion for default judgment should be granted and defendant Thomas Abboud's motion to strike should be denied.

**I.     BACKGROUND**

The individual defendants are/were officers of defendant TKA Electronics, Inc. ("TKA"). Comcast alleges that beginning in the early 1990s until September 2002, TKA manufactured, sold, and distributed cable television descrambling equipment that others used to intercept the plaintiff's scrambled programming services, in violation of federal and state law. *See* 47 U.S.C. §§ 553, and Neb. Rev. Stat. § 28-515. On September 17, 2002, this court entered a temporary restraining order permitting expedited discovery, freezing the defendants' personal and business accounts, and ordering an accounting and seizure of the defendants' business inventory and records. Filing No. 10. The court granted a preliminary injunction on October 15, 2002. Filing Nos. 21, 23.

Comcast contends that the undisputed evidence shows that it is entitled to judgment as a matter of law. In support of its motion, Comcast has shown that the defendants

Thomas Abboud, Cathy Vigneri, Kim Abboud, Raymond Vigneri, and Terry Abboud were all employees or officers of TKA. Filing No. 152, Index of Evidence, Exhibits ("Exs.") D, E, F, G, H, and K (defendants' tax returns). Defendant TKA was engaged in the business of selling or distributing cable descrambler boxes. *Id.*, Ex. C, Affidavit of Richard Killian, ("Killian Aff.") at 1-2. Subpoenaed financial records form defendants' accountants identify Cathy Vigneri as TKA's "Bookkeeper," Raymond Vigneri as "Sales and Advertising," and Terry Abboud as "Operations Manager." *See id.*, Ex. K.

All of the individual defendants are or were related to each other: Thomas Abboud and Kim Abboud are or were husband and wife; Cathy (Abboud) Vigneri is the sister of Thomas and Terry Abboud; Ray Vigneri is the husband of Cathy Vigneri; Thomas and Terry Abboud are brothers. *See id.,* Ex. I, Deposition of Cathy Vigneri ("Vigneri Dep.") at 6; Ex. G, Joint Tax Returns of Cathy and Raymond Vigneri; Ex. D, Joint Tax Returns of Thomas and Kim Abboud; Ex. H, Tax Return of Terry Abboud. Cathy Vigneri, Thomas Abboud and Terry Abboud are also related to Steve Abboud, Ronald Abboud, David Abboud and Gene Abboud, all of whom have been involved in cable descrambler litigation at one time or another. *See* Vigneri Dep. at 8-9; *United States v. Abboud*, 273 F.3d 763 (8th Cir. 2001); *Abboud v. Time Warner Ent. Co., L.P.*, 129 F.3d 121 (8th Cir. 1997); *Time Warner Cable of New York City v. M.D. Electronics*, Inc., 101 F.3d 278 (2d Cir. 1996); *Comcast of Illinois X, LLC v. Platinum Electronics*, Inc., 336 F. Supp, 957 (D. Neb. 2004); *United States v. United Imports Corp.*, 165 F. Supp. 2d 969 (D. Neb. 2000); *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019 (D. Neb. 1991).

Comcast owns and operates cable television systems in several states. *See* Filing

No. 152, Ex. B, Affidavit of Gerald Mulack ("Mulack Aff.") at 1. Comcast offers cable television programming to customers or "subscribers" for a monthly fee. *Id.* at 2. Subscribers purchase additional premium programming services and pay-per-view programming for additional fees. *Id.* at 2-3. Each subscriber is entitled to receive only the level of programming that they have purchased. *Id.* Comcast encodes or "scrambles" its programming signals and provides its subscribers with devices known as "converter boxes" to decode the scrambled signals and enable subscribers to view the programming that they purchased. *Id.* at 3. Under Comcast's system, programming that has not been purchased will remain scrambled and cannot be viewed. *Id.* Comcast's system is "addressable," which means that Comcast programs each subscriber's converter box to receive only purchased services. *Id.* However, unauthorized "pirate" cable descramblers can be installed to allow subscribers to receive cable programming services without paying for them. *Id.*

The uncontroverted evidence shows that Comcast's predecessor corporation, AT&T Broadband ("AT&T"), began investigating TKA in connection with the sale of "pirate" cable descramblers in 2002. *See* Filing No. 152, Ex. C, Affidavit of Richard Killian ("Killian Aff.") at 1. Killian was employed by AT&T as a Special Project Auditor/Investigator. *Id.* at 1. Killian discovered an advertisement for TKA in the March 2002 issue of Popular Science magazine. *Id.* Killian found that the Nebraska Secretary of State lists TKA Electronics, Inc. as having an address of 13217 C Street, Omaha, Nebraska 68144. *Id.* at 2. Records on file with the Secretary of State list Thomas Abboud as the President, Director, Treasurer and Registered Agent of TKA and Cathy Vigneri as Secretary of the corporation. *Id.*

4

Thomas Abboud's address is shown as 14545 Industrial Road #1, Omaha, Nebraska 68144 and Cathy Vigneri's address is shown as 3939 S. 84th Street, Omaha, Nebraska 68124.  *Id.*

The TKA advertisement in Popular Science states, "Cable TV Descramblers – New Universal Box Works on All Cable Systems."  *Id.*, Ex. A (attached thereto).  The advertisement directed consumers to a website known as "tkaelectronics.com." *Id.* at 2. The website offered numerous descrambling devices for sale, noting that some were "bullet-proof and "nonaddressable."[3]  *Id.* at 2.  On the website, TKA represented that the descramblers were legal, analogizing the devices to a telephone that could be purchased to receive telephone service.  *Id.* at attached Ex. 2 (screenprint dated April 5, 2002 of "Frequently Asked Questions" webpage). The website also contained a disclaimer as part of the contract to order a device.[4]  *Id.,* attached Ex. 2.

---

[3]By "Full Bullet Proof Protection," the seller means that cable companies cannot send an electronic signal (or a "bullet") to the descrambler to shut it down.  *See* Killian Aff. at 2.  The phrase "100% Non-Addressable Unit" means that a cable company cannot control the programming that the descrambler receives from the cable provider's central computer.  *Id.*

[4]The disclaimer states:

I, the purchaser, understand that certain cable television equipment sold legally may nevertheless be used in an unauthorized manner to aid in the theft of cable television services.  As an inducement to the dealer to sell me cable equipment, I HEREBY DECLARE, under penalties of perjury, that I understand that federal laws and various state laws provide for the substantial criminal and civil penalties for the theft of cable television services, and that all products I purchase from the dealer, now and in the future, will not be used to intercept any cable television signal without proper authorization from my local cable company and payment of all lawful charges, and I will only use the equipment in accordance with all applicable federal and state laws . . .

I acknowledge that it is the responsibility of all cable system subscribers to notify their cable provider prior to use of this equipment. Any unauthorized reception shall void warranty and the purchaser agrees to become liable for any cost or expenses incurred as a result of such illegal use including but not limited to reasonable attorney fees.  By the purchase of this equipment, purchaser expressly agrees to abide by all applicable usage law . . .

As part of his investigation, Killian ordered a descrambler from the website. Killian Aff. at 2-3. The order requested cable company information and model number and Killian indicated "AT&T" and "st 1600." *Id.* at 2. The price of the descrambler was $179.00 plus $16.00 for shipping, for a total of $195.00. *Id.* Killian requested shipment to "William Smith" at 993 Oak Avenue, Aurora, IL. *Id.* Killian purchased a Money Order in the amount of $195.00 payable to "TKA Electronics," and left the money order at the site of delivery. *Id.*, and attached Ex. 3. He later received an e-mail confirmation and tracking number from "tom@tkasports.com" confirming that the order had been shipped via United Parcel Service. *See id.,* and attached Ex. 4.

On July 29, 2002, Killian received a package addressed to William Smith from TKA Electronics, Inc. with a return address of "Shipping (402) 697-9048, TKA Electronics, 14545 Industrial Road, Omaha, NE 68144-3228." *See id.* at 3*,* and attached Exs. 5 (shipping label) and 6 (photo of package). The package contained a descrambling device and invoice # 00112373 from "TKA Electronics, 14545 Industrial Road #1, Omaha, NE 68144." *See id.* and attached Ex. 7. The package also contained an advertising brochure featuring other descramblers and a user's manual. *Id.* and attached Ex. 9. Killian tested the descrambling device on AT&T's cable system and found it was capable of descrambling all of AT&T's scrambled premium and pay-per-view services without authorization. *Id.* at 4. Comcast has also submitted evidence subpoenaed from

---

WARNING: The purchaser must comply with all local, state, and federal regulations regarding ownership of cable T.V. equipment. We will not knowingly sell cable equipment to persons who intend to illegally obtain cable programming. You are required by law to subscribe to all cable services you are receiving including basic, premium, and pay-per-view programming.

Killian Aff. at Ex. 2.

defendants' accountants that shows that defendants personally profited from the sale of cable descramblers.  Filing No. 152, Exs. D, E, F, G, and I (tax returns).

In opposition to Comcast's motion, defendants argue that Comcast has not proved that each of them individually violated the Cable Act.  They also argue that Comcast's action is barred under either the statute of limitations or the doctrine of laches.  Defendants have not offered evidence, by affidavit or otherwise, in support of their arguments.  Furthermore, this court addressed and rejected the statute of limitations/laches argument in its earlier order denying defendants Cathy Vigneri's and Terry Abboud's motions for summary judgment.  Filing No. 124.  Defendant Raymond Vigneri also argues that Comcast has not shown that he profited from TKA's sale of descramblers.  He asserts that the salary he drew from TKA was for development of a product called "Bike Jammer."  *See* Filing No. 170.  Terry Abboud similarly argues that he was paid for duties in connection with another Thomas Abboud enterprise called "Stadium Club."  See Filing No. 172.  Neither Terry Abboud nor Raymond Vigneri have submitted evidence to refute Comcast's showing that TKA was in the business of selling descramblers.

Defendants also contend that they are entitled to summary judgment in their favor for several reasons.  Defendants have not presented evidence in support of these contentions.

Comcast also moves for entry of a default judgment against defendant TKA.  The clerk's entry of default establishes that defendant TKA violated the Cable Communications Act, 47 U.S.C. § 553.  Undisputed evidence shows that TKA profited in the amount of $8,726,830 from its sale of illegal cable descramblers during the applicable period.  Filing No. 150, Exs. B-F (TKA's subpoenaed S-Corporation tax returns).  This amount represents

defendant TKA's income as relected in its tax records as follows: $2,268,366 in 1996; $2,168,770 in 1997; $1,653,053 in 1998; $1,605,197 in 1999; and $1,031,444 in 2000. *See id.* There is no evidence to the contrary.[5]

## II.    DISCUSSION

In deciding a motion for summary judgment, the court determines whether the record, when viewed in the light most favorable to the nonmoving party, shows any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* Once the moving party meets the initial burden of showing there is no genuine issue of material fact, the nonmoving party may not rest upon the allegations in the pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The nonmoving party may not merely show that there is some metaphysical doubt as to the material facts, but must show "there is sufficient evidence to support a jury verdict" in the nonmoving party's favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

---

[5]Because TKA is in default, Comcast's calculations are wholly unrebutted. TKA is a corporation unrepresented by counsel and cannot proceed *pro se*. See Filing No. 145. Defendant Thomas Abboud, however, has filed a motion to strike, Filing No. 154, the evidence that Comcast submitted in connection with the motion, Filing No. 150. He argues that Comcast's calculation ignores TKA's cost of doing business and fails to account for sales of other, legitimate, products by TKA. No evidence of any expenses or deductions for sales of products other than descramblers has been submitted, however.

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The Cable Communications Act prohibits a "person" from "intercept[ing] or receiv[ing] or <u>assist[ing]</u> in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1) (emphasis added). The prohibition against "assisting" in intercepting unauthorized transmissions includes the illegal manufacture and sale of "pirate" descrambling devices. 47 U.S.C. § 553(a)(2). The act was designed to "protect the revenue of television cable companies from unauthorized reception of their transmissions." *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir. 1991). It clearly applies to the sale of cable descramblers—it is "primarily aimed at preventing the . . . distribution of so-called black boxes and other unauthorized converters which permit reception of cable service without paying for the service." *Storer Communications, Inc., v. Mogel,* 625 F. Supp. 1194, 1198 (S.D. Fla 1985) (discussing legislative history).

Section 553 prohibits sales of cable descramblers if the seller knew or intended that the device would be used for unauthorized reception of cable television programming service. *See, e.g., Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1047 (9th Cir. 1997); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996); *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1003-05 (2d Cir. 1993); *United States v. Coyle*, 943 F.2d 424, 427 (4th Cir. 1991); *United States v. Gardner*, 860 F.2d 1391, 1398-99 (7th Cir. 1988)*;*

9

*Intermedia Partners Southeast v. QB Distributors, LLC*, 999 F. Supp. 1274, 1281 (D. Minn. 1998)*; Time Warner Cable v. Cable Box Wholesalers, Inc*., 920 F. Supp. 1048 (D. Ariz. 1996)*; Time Warner Cable v. Freedom Electronics, Inc.*, 897 F. Supp. 1454, 1459 (S.D. Fla. 1995); *Storer Communications*, *Inc. v. Mogel,* 625 F. Supp. 1194, 1198 (S.D. Fla.1985).

Intent or knowledge that a device will be used for unauthorized reception can be inferred from the nature of the "pirate" devices sold. *TKR Cable v. Cable City Corp.*, 1996 WL 465508 at *7 (holding that selling non-addressable, "bullet proof" descramblers with installation instructions and representations that the descrambler can get premium and pay-per-view channels can have only one purpose: "to enable the purchaser to receive and unscramble programming services offered by a cable company without notifying the cable company and without paying for the services"), *aff'd,* 267 F.3d 196 (3rd Cir. 2001). *See also Subscription Television v. Kaufmann,* 606 F. Supp 1540, 1542 (D.D.C. 1985) (finding the only reason to remove the addressable function of a descrambling device is to "enable a user to receive and unscramble an STV signal without notifying the signal provider"); *see also Continental Cablevision, Inc. v. Poll*, 124 F.3d at 1047 (finding the sale of non-addressable descrambling devices is evidence of seller's intent to assist in the interception of cable services). A "bullet-proof" feature is evidence of an intent to assist in the theft of cable television services. *See United States v. Coyle*, 943 F.2d 424, 425 (4th Cir. 1991) (similar device found to hinder cable companies from discovering the unauthorized use of a descrambler)*; Poll,* 124 F.3d at 1047; *TKR Cable,* 1996 WL 465508 at *7.

Similarly, a seller's installation instructions provide additional evidence of a seller's intent that a descrambler would be used for theft of cable services. *See, e.g., Storer Communications, Inc.,* 625 F. Supp. at 1200 (finding defendant's provision of installation instructions is conduct which assists in receiving or intercepting cable transmissions); *TKR Cable,* 1996 WL 465508 at *7 (finding defendant's provision of "hookup instructions" for device to be evidence of intent); *Columbia Cable TV Co. v. McCary*, 954 F. Supp. 124, 128 (D.S.C. 1996) (same).

With respect to the sale of cable descramblers, a disclaimer that shifts culpability to the ultimate consumer will not shield the sellers from liability. *See United States v. Gardner*, 860 F.2d at 1397 ("'Whatever the attempted legal effect of the defendant's disclaimer, the ultimate trier of fact could easily find that it was a transparent attempt to deny the patent illegality of the defendant's acts'"); *Subscription Television v. Kaufmann*, 606 F. Supp. 1540, 1542-3 (D.D.C. 1985) (finding "worthless" the defendant's "instruction" that the purchaser of a non-addressable decoder should communicate with the signal provider).[6] In fact, a seller's use of a disclaimer reflects its awareness of the illegality of the business. *See Columbia Cable TV Co. v. McCary,* 954 F. Supp. at 127 (finding that "the disclaimer demonstrates knowledge of the most probable if not only use of the devices").

Once liability has been determined, the court may award the aggrieved party "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 553(3)(A)(I). All of the defendants' profits

---

[6]*See also ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)*; Intermedia Partners Southeast Gen. P'ship,* 999 F. Supp. at 1282; *Time Warner,* 920 F. Supp. at 1053 (D. Ariz. 1996)*; TKR Cable Co.,* 1996 WL 465508; *Time Warner Cable v. Freedom Electronics*, 897 F. Supp. at 1459; and *Oceanic Cablevision, Inc. v. M.D. Electronics*, 771 F. Supp. 1019, 1025 (D. Neb. 1991) (involving defendant Joseph Abboud).

may be awarded to the plaintiff, whether or not the profits were derived from the sale of cable descramblers into the geographical areas served by the plaintiff's cable system areas. *See Time Warner Entertainment/Advance-Newhouse P'ship v. Worldwide Electronics*, 50 F. Supp. 2d at 1300; *CSC Holdings, Inc. v. KDE Electronics Corp.*, 2000 WL 284005 (N.D. Ill. 2000). Further, the act provides for individual liability. *Kingvision Pay Per View v. Myths, Inc.*, 2001 WL 218909 (N.D. Ill. 2001). The act defines the term "person" as an "individual, partnership, association, joint stock company, trust, corporation, or government entity." 47 U.S.C. § 522(15). The act permits "the court in its discretion [to] increase the award of damages [by] an amount of not more than $50,000," when the court finds that a defendant that has violated Section 553 acted "willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B); *Freedom Electronics*, 897 F. Supp. at 1460; *Poll*, 124 F.3d at 1049. The standard for willfulness in a civil case requires proof of "a disregard for the governing statute and an indifference to its requirements." *Transworld Airlines v. Thurston*, 469 U.S. 111, 127 (1985).

A court may grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations." 47 U.S.C. § 553(c)(2)(A). A court may also award a prevailing party recovery of full costs, including investigative costs and reasonable attorney's fees. 47 U.S.C. § 553(c)(2)(C); *Poll*, 124 F.3d at 1046 (approving the district court's award of plaintiff's attorney's fees); *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993) (noting district court's award of plaintiff's full costs); *American Cablevision v. McGinn,* 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (awarding full costs, including recovery of investigative costs); *In re Cohen,* 121 B.R. 267, 269 (Bankr.

E.D.N.Y.1990) (awarding investigative fees pursuant to section 553 as part of overall damage assessment against cable descrambler seller).

The undisputed evidence in this case establishes that the defendants were involved in the sale/distribution of illegal cable descramblers. The defendants' website advertised that its descramblers were "100% bullet proof," an indication that the descramblers would be immune from electronic counter-security measures; that is, electronic signals sent by a cable-services provider to destroy an unauthorized descrambler detected on a cable system. Defendants attempt to rely on the disclaimers on TKA's website to shield them from liability and to shift culpability to their customers is misplaced. The court finds that use of the disclaimer is evidence that defendants knew that the intended use of the descramblers was illegal. Furthermore, the court finds that use of the phrase "bullet-proof" and reference to nonaddressable functions provide further evidence of defendants' intent. Both of these are clear indications that the defendants were selling cable descramblers intended to receive unauthorized cable services, i.e., premium channels such as HBO, Showtime, etc. as well as pay-per-view movies and events. Defendants have provided no evidence to counter Comcast's showing. The court, thus, finds that the undisputed evidence shows that defendants sold cable descramblers in violation of 47 U.S.C. § 553, knowing or intending that the devices would be used for unauthorized reception of cable television programming service.

Accordingly, having determined that defendants violated 47 U.S.C. § 553, the court finds Comcast is entitled to damages. Again, defendants have not provided evidence to refute Comcast's showing. Defendants argue only that the amounts attributed to them as

income from TKA were earnings, and not "profits."[7]  By whatever label, Comcast has shown that defendants benefitted from TKA's illegal activities to the extent of the money that they made.  There is no evidence that TKA profited from any other enterprise.  Comcast has shown that it is entitled to a judgment for damages in the amount of $476,082 against defendant Thomas Abboud; in the amount of $164,867 against defendant Cathy Vigneri; in the amount of $45,847 against defendant Kim Abboud; in the amount of $93,188 against defendant Raymond Vigneri; and in the amount of $19,837 against defendant Terry Abboud.  These amounts represent the defendants' income from TKA during the applicable period, as established by their tax records.

In addition to its request for damages, Comcast prays for statutory enhanced damages against all the defendants.  The evidence establishes that defendant Thomas Abboud operated the business of selling cable descramblers willfully and with full knowledge of the damages that such descramblers cause to cable service providers.  The Cable Act reflects the Congressional intent of imposing substantial liability on  distributors of illegal descrambling equipment.  The uncontested facts show that defendant Thomas Abboud deliberately sold, marketed, and distributed illegal cable descramblers, and made substantial amounts of money in doing so.  *See*, e.g., *General Instrument Corp. v. Nu-Tek Electronics & Mfg., Inc.*, 1997 WL 325804, *3 (E.D. Pa. 1997) (assessing enhanced damages on defendant David Abboud and noting "[a]s for the punitive damages here . . . the defendant . . . made huge sums of money, well knowing that it was—and he

---

[7]Defendant Ray Vigneri has submitted evidence showing that he spent substantial time promoting the "Bike Jammer" product while employed by TKA.  See Filing No. 175, Exs. 1-6.  Vigneri has not shown, however, that TKA ever profited from the sale of these products.  The evidence does not refute Comcast's showing that Vigneri profited from TKA's sale of the descrambling devices.

was—repeatedly and brazenly flouting the law in so doing . . . [a]t $50,000, he gets off cheap"). The court finds an assessment in the maximum amount of $50,000 against defendant Thomas Abboud is appropriate in this case.

The court further finds that the issuance of a permanent injunction is justified in this case. The defendants' business was built on defrauding the cable industry by providing the means necessary to steal cable television programming. Further, there is some risk that defendants will continue such conduct in the future. The defendants' conduct, as well as that of related entities and individuals in this and other cases, suggest that the defendants could commence operations under some other corporate shell in the future.

IT IS, THEREFORE, ORDERED:

1. Defendants' motions for summary judgment (Filing Nos. 153, 155, 157, and 158) are denied;

2. Defendant Thomas Abboud's motion to dismiss (Filing No. 183) is denied;

3. Comcast's motion for summary judgment (Filing No. 151), is granted; Comcast is awarded damages and statutory enhanced damages against each defendant; a separate order of judgment in favor of Comcast and against defendants will be entered this date;

4. Comcast's motion for a default judgment (Filing No. 149) is granted; defendant Thomas Abboud's motion to strike Filing No. 149 (Filing No. 154) is denied; a separate order of judgment in favor of Comcast and against defendant TKA will be entered this date;

5. Comcast is awarded its costs, including investigative fees, and attorneys fees in an amount to be later determined;

6. Comcast shall file its motion for attorneys fees and investigative fees within 10 days of the date of this order and shall file its motion for taxable costs with the clerk of court in accordance with NECivR 54.1; and

7. The defendants are permanently enjoined from the manufacture, modification, and/or sale/distribution of cable descramblers pursuant to 47 U.S.C. § 553(c)(2)(A).

DATED this 2nd day of September, 2005.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge